United States District Court
Southern District of Texas

**ENTERED**

September 29, 2016

David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| VUJASINOVIC & BECKCOM, PLLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-15-2546 |
| | § | |
| GINA CUBILLOS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This action arises from the plaintiff law firm's demand to be paid the attorneys' fees it claims under agreements to represent the family and estate of a man killed in an automobile accident. The representation agreements between the law firm and the defendant family members called for payment of contingent fees if the underlying wrongful-death case — which was pending in Wyoming — resulted in recovery. The family fired the law firm and refused to pay fees based on any recovery in the wrongful-death suit. This lawsuit followed.

The issue addressed in this Memorandum and Order is not whether the law firm is entitled to fees, or how much. Instead, the issue is what tribunal will decide those questions. The representation agreements the law firm and family members signed contained an arbitration clause. The law firm moves to compel arbitration of its fee claim. The family wants this case, or at least certain claims in the case, to proceed in court rather than arbitration.

Based on the pleadings; the motions, responses, and replies; the arguments of counsel; and the applicable law, this court grants the motion to compel. Because no issue remains to be tried rather than arbitrated, this case is dismissed, without prejudice, in favor of the arbitration.

1

The reasons for these rulings are explained below.

## I.    Background

### A.    The Family's Contract with the Texas Law Firm

On November 8, 2014, James Ednie, Tanya Gooden, and Cameron Gooden were killed in a car accident in Wyoming.  (Docket Entry No. 4-1, Ex. 1 at ¶ 2). The accident occurred when an allegedly defective tire on a FedEx tractor failed, causing the tractor-trailer to swerve and collide with the vehicle James Ednie was driving.  (Docket Entry No. 4-1, Ex. 3 at ¶ 9-16).  Gina Cubillos, James Ednie's sister, wanted a "national" law firm to file a wrongful-death action against the tire manufacturer and FedEx. (Docket Entry No. 15-1, Ex. A at ¶ 3, 8).  Cubillos, a New York citizen, completed a form on the website of a Texas law firm, Vujasinovic & Beckcom, PLLC ("VB"). (Docket Entry No. 15-1, Ex. A at ¶ 3).  On November 14, 2014, Cubillos signed a representation agreement to have VB represent her in the wrongful death claim arising from her brother's death. (Docket Entry No. 15-2, Ex. A-1 at 4).  The other members of James Ednie's family—all New York citizens and potential beneficiaries of Cubillos's wrongful-death action—signed similar agreements the next day.  (*Id.* at 8, 12, 16, 20).

The representation agreements included a contingent-fee arrangement:

ATTORNEYS' FEES

In consideration of the services to be rendered for me by my said Attorneys hereunder, I hereby sell, transfer, assign and convey to my above named Attorneys an undivided interest of FORTY PERCENT (40%) of any amount awarded by suit or by settlement after suit is filed.  Attorneys are authorized to deduct the legal fee from the gross proceeds of any settlement or judgement obtained, before any referenced in the next paragraph, and any workers compensation, government, Medicaid, Medicare, or insurance liens of any kind.  IN THE EVENT OF NO RECOVERY, CLIENT SHALL OWE ATTORNEYS NOTHING FOR SERVICES RENDERED OR ANY EXPENSES INCURRED.

(Docket Entry No. 15-2, Ex. A-1 at 1).

The agreements also contained choice-of-law provisions:

TEXAS LAW TO APPLY
This contract shall be construed under and governed by the laws of the State of Texas.  Any suit between the parties to this agreement regarding anything covered by this agreement will be filed in a Court of competent jurisdiction in Harris County, Texas.

(*Id.* at 3).

The agreements required disputes to be resolved through binding arbitration under the Texas Arbitration Act, using the American Arbitration Association's Commercial Arbitration Rules, in Harris County, Texas.  The clause read as follows:

ARBITRATION

ANY AND ALL DISPUTES, CONTROVERSIES, CLAIMS OR DEMANDS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY PROVISION HEREOF, THE PROVIDING OF LEGAL SERVICES BY ATTORNEYS TO CLIENT OR IN ANY WAY RELATED TO THE RELATIONSHIP BETWEEN ATTORNEY AND CLIENT, WETHER IN A CONTRACT, TORT, OR OTHERWISE AT LAW OR IN EQUITY, FOR DAMAGES OR ANY OTHER RELIEF, SHALL BE RESOLVED BY BINDING ARBITRATION PURSUANT TO THE TEXAS GENERAL ARBITRATION STATUTE IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES THEN IN EFFECT WITH THE AMERICAN ARBITRATION ASSOCIATION.  ANY SUCH ARBITRATION PROCEEDING SHALL BE CONDUCTED IN HARRIS COUNTY, TEXAS. . . .

(*Id.* at 3).  Finally, the contracts contained a severability clause:

LEGAL CONSTRUCTION

In case any provision in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision thereof and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

(*Id.* at 3).

### B.      The Underlying Wrongful-Death Suit in Wyoming

VB decided to file the suit in Wyoming federal district court.  (Docket Entry No. 15-1, Ex. A at ¶ 11).  VB retained a Wyoming attorney, Stephen Kline, as local counsel.  (*Id*. at ¶ 14).  Kline followed the procedures to have Cubillos appointed the estate's representative under the Wyoming wrongful-death statute.[1]  (Docket Entry No. 4-1, Ex. 1 at ¶4).  On June 25, 2015, Kline filed the wrongful-death suit in the United States District Court for the District of Wyoming. (Docket Entry No. 4-1, Ex. 3). Cubillos sued Bridgestone Americas Tire Operation, LLC; FedEx Ground Package System, Inc.; and several unidentified corporations.  (*Id.*).  Cubillos sued under Wyoming state law, asserting defective-product claims and alleging reckless indifference.  (*Id.* at ¶ 17-35).

After filing the complaint, VB retained a national investigator from Ohio who gathered evidence from the deceased's vehicle and the crash site, retrieved the police report, interviewed state troopers, communicated with the District Attorney's office, and inspected the other vehicle that allegedly caused the accident.  VB also retained an expert and communicated with opposing counsel and counsel representing the other passengers killed in the accident. It performed these actions from its Houston, Texas office. (Docket Entry No. 15-1, Ex. A at ¶ 13).

### C.      Cubillos Fires VB

On June 10, 2015, the defendants expressed their disappointment with VB's services in an email.  (Docket Entry No. 4-1, Ex. 7 at 33).  They were offended by the law firm's failure to personally to meet with them in New York or Wyoming and believed that the law firm was not

---

[1] Cubillos is the wrongful-death representative, making her the plaintiff in the Wyoming action.  The other members of the Ednie family are potential beneficiaries of the suit, but cannot also be plaintiffs under Wyoming law.  In Wyoming, only a court-designated, wrongful-death representative can bring a wrongful-death case.  WYO. STAT. ANN. § 1-38-102; *see Ashley v. Read Constr. Co.*, 195 F. Supp. 727, 728 (D. Wyo. 1961) (stating that only the wrongful-death representative can bring a wrongful-death suit in Wyoming).

4

treating them with the proper attention and care. (*Id.*). They became more dissatisfied after VB missed a deadline for exchanging initial disclosures and failed to ask the family members for documents that they thought would help their case. (Docket Entry No. 15-4, Ex. A-3 at 1).

On June 12, 2015, Cubillos sent VB an email stating that she and the rest of the Ednie family had decided to end VB's representation and instead continue the lawsuit with alternate counsel. (Docket Entry No. 4-1, Ex. 6 at 30). The email asked for a list of expenses that VB had incurred and stated Cubillos's intention to pay those expenses when the wrongful-death suit settled. (*Id.*). This email was followed by signed termination letters from family members.

VB tried to talk to Cubillos, without success. VB sent a letter to Cubillos, (Docket Entry No. 15-5, Ex. A-4 at 2-4), on June 17, 2015, explaining that Cubillos and the Ednie family had terminated VB's representation agreements without good cause, entitling VB to a percentage of the eventual recovery. (*Id.*). The letter also reminded Cubillos that any disputes would need to be resolved in accordance with the arbitration clause in the agreements. (*Id.* at 3-4).

On June 17, 2015, VB brought this action in Harris County district court. (Docket Entry No. 1-1, Ex. 1). The defendants timely removed to this court. (Docket Entry No. 1). After removal, the defendants moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. (Docket Entries No. 4, 21).

On May 3, 2016, a Wyoming state court approved a confidential settlement between Cubillos, as the wrongful-death representative in the action, and the defendants, Bridgestone Americas Tire Operations, LLC, FedEx Ground Package System, Inc., and three other corporations. (Docket Entry No. 21-1 at 2). The settlement included a factual finding that "the total award of attorney fees to Kline Law Office and VB Attorneys combined shall be 40 percent of the gross

settlement and that any award greater than that is unreasonable under the circumstances." (*Id.* at p. 4). The Wyoming court ordered that the 40 percent portion of the settlement be "placed in a separate account in trust by Kline Law Office and not distributed pending further order" of the Wyoming court. (*Id.* at p. 4). Cubillos filed an interpleader action against Kline and VB on May 25, 2016, asking the federal district court in Wyoming to apportion between Kline and VB the 40 percent of the settlement fund set aside for attorneys' fees. (Docket Entry No. 21-2 at p. 3).

This court denied the motion to dismiss for lack of personal jurisdiction in a ruling at the end of a hearing held on June 24, 2016. Having resolved its jurisdiction to resolve the arbitrability issues, the court requested supplemental briefing on the effect, if any, of the Wyoming proceedings on arbitrability. The parties have submitted supplemental briefs.

## II.     The Legal Standard to Compel Arbitration

In Texas, a party asking a court to compel arbitration under § 171.021 of the Civil Practice and Remedies Code must show the existence of an agreement to arbitrate and that the opposing party refuses. *See, e.g. S.C. Maxwell Family P'ship v. Kent*, 472 S.W.3d 341, 343 (Tex. App.—Houston [1st Dist.] 2015). When a contract contains a clause specifying Texas law (as here), but does not exclude the applicability of the Federal Arbitration Act, the Federal Arbitration Act and the Texas Arbitration Act both apply. *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 338 n. 7 (5th Cir. 2004). If a valid arbitration agreement exists, both Texas and federal law require courts to apply a strong presumption favoring arbitration. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Generally, issues of contract formation (including the existence of an arbitration agreement) are decided under state law and are gateway issues for the court. *Kubala v. Supreme Prod. Servs., Inc.*, No. 15-41507, 2016 WL 3923866, at *2 (5th Cir. July 20, 2016). The

6

court also generally determines whether the scope of the arbitration agreement covers the claims before it.  If the claims are within the scope of the arbitration clause, the court must compel arbitration.  *Id.*  But the parties may also agree to delegate that scope determination to the arbitrator. *Id.*

## III.    Analysis

 The issues have narrowed since VB's first motions seeking to compel arbitration and the defendants' motions asserting a lack of personal jurisdiction.  The defendants concede this court's jurisdiction to consider arbitrability issues and the proper tribunal to resolve them, and to compel arbitration. (Docket Entry No. 32 at 3).  It is significant that VB is not seeking to compel arbitration of claims against Steve Kline or his law firm.  (Docket Entry No. 28 at 7).  The parties continue to dispute what claims must be referred to arbitration.   The issue is scope.

The defendants usefully categorize the claims into three buckets: the "termination issues"; the "enforcement issues"; and the "allocation issues." (Docket Entry No. 32 at 4).  The termination issues are whether the defendants had good cause to terminate their representation agreement with VB.  The enforcement issues deal with whether the liens that VB asserts against the settlement proceeds are valid.  And the allocation issues deal with how the 40 percent of the settlement that the Wyoming court set aside as attorneys' fees should be split up between VB and the Kline law firm. VB suggests that all of these disputes are properly arbitrable.  The defendants argue that the termination issues are the only arbitrable claims.

VB argues that there are valid agreements to arbitrate, and the defendants concede the existence of agreements to arbitrate.  (Docket Entry No. 28 at 4; Docket Entry No. 32 at 3).  VB argues that the agreements leave all scope considerations to the arbitrator.  (Docket Entry No. 28 at

5).  Specifically, VB argues that the agreements incorporate the AAA Commercial Arbitration Rules by reference, and that both Texas and federal courts have ruled that such incorporation transfers the power to decide threshold or gateway arbitrability issues to the arbitrator, not the court.  VB also argues that the claims it seeks to arbitrate are within the scope of the agreements.  VB emphasizes that courts have applied language in broad arbitration provisions covering "any and all . . . claims . . . arising out of or related to this agreement . . . or in any way relating to the relationship between attorneys and client . . ." to cover a wide range of disputes.  (Docket Entry No. 28 at 6).  VB argues that each claim it seeks to have arbitrated "directly arises under the Fee Contracts and/or the parties' relationship."  (*Id.*).  VB notes that the claims are not asserted against third parties and argues that no third parties are necessary to determine whether the defendants terminated VB's representation agreements without good cause.  (*Id.* at 6-7).

The defendants' response emphasizes practical factors.  They argue that arbitration between VB and the defendants will not advance a useful resolution of the fight over the pot of settlement money in Wyoming, in part because the Kline firm cannot be compelled to arbitrate its claim to that pot.  (*Id.* at 3-4).  The defendants also argue that the court should limit the arbitrable issues to whether the defendants terminated VB's representation agreements for good cause, and that the other issues—including whether VB has enforceable liens against the settlement fund and what amount of the fund is owed to VB—implicate the Kline law firm's claims, rights, and interests, which cannot be arbitrated.  (*Id.* at 5-6).  The defendants argue that interpleader jurisdiction over the Kline firm's claims need not yield to the federal policy favoring arbitration, (*id.* at 6 (citing *Fid. & Guar. Life Ins. Co. v. Harrod*, No. CIV. CCB-05-2732, 2006 WL 1911077, at *3 (D. Md. May 25, 2006)).  In the alternative, the defendants argue that if the case is referred to arbitration, the court

8

should limit the scope of arbitrable issues to the "factual predicates necessary for the interpleader proceedings," (*id.* (citing *New York Life Ins. Co. v. Turner*, No. C13-0473JLR, 2013 WL 6587930, at \*5 (W.D. Wash. Dec. 16, 2013), *enforcement granted sub nom. New York Life Ins. Co. v. Turner*, No. C13-0473JLR, 2014 WL 12103707 (W.D. Wash. May 6, 2014)).

Fifth Circuit and Texas cases unambiguously hold that incorporating the AAA rules into an arbitration agreement makes threshold questions of arbitrability questions for the arbitrator to decide, rather than the court. Incorporating the AAA rules by reference is the functional equivalent of agreeing to arbitrate arbitrability. *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Schlumberger Tech. Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791, 802 (Tex. App.—Houston [1st Dist.] 2011). The AAA rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Petrofac*, 687 F.3d at 675 (quoting AAA rules) (internal quotation marks omitted). Incorporation "presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Id.* (citing cases from the First, Second, Eighth, Eleventh, and Federal Circuits); *see also Schlumberger*, 355 S.W.3d at 802 (applying Texas law). This type of agreement to arbitrate arbitrability is typically referred to as a "delegation clause" when it is explicit in the agreement. Even though this arbitration agreement does not contain an explicit delegation clause, the *Petrofac* decision makes clear that incorporating the AAA rules by reference, as here, serves as an implicit delegation clause.

When an arbitration agreement contains an explicit or implicit delegation clause, the analysis changes. The Fifth Circuit recently clarified that

> [e]nforcement of an arbitration agreement involves two analytical steps. The first is contract formation—whether the parties entered into any arbitration agreement at all.

> The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement. Ordinarily both steps are questions for the court. *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). But where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

*Kubala*, 2016 WL 3923866, at *2.  The Fifth Circuit explained that the Supreme Court has conceptualized the framework as involving three layers.  First, the merits: does the plaintiff have a right to recover?  Second, arbitrability: can the plaintiff seek recovery in court, or must she seek recovery in the agreed-on arbitral forum?  And third, when there is a delegation clause, who has the power to decide whether the plaintiff can seek recovery in court, or must do so in arbitration?

A delegation clause decisively "transfer[s] the court's power to decide arbitrability questions to the arbitrator."  *Id.*  The clause "requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues."  *Id.*  (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).  The courts hold that:

> if the party seeking arbitration points to a purported delegation clause, the court's analysis is limited. It performs the first step—an analysis of contract formation—as it always does. But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated.  If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases.

*Id.*  The *Kubala* court, in a footnote, recognized that it had, in an earlier case, "carved out a narrow exception to the *Rent-A-Center* rule: Where the argument for arbitration is 'wholly groundless,' we refuse to enforce a delegation clause."  *Id.* at n.1.  But "such cases are exceptional, and . . . not a license for the court to prejudge arbitrability disputes more properly left to the arbitrator pursuant to a valid delegation clause."  *Id.*  If a party relies on the exception to resist arbitration, the only

10

question for the court is whether the parties have a *bona fide* dispute about whether a claim is arbitrable.  If so, the question is for the arbitrator.  *Id.*  In essence, the exception applies only to block near-frivolous arguments in favor of compelling arbitration.  That is not the case here.

The *Kubala* court's analysis is instructive.  It emphasized that the first question (contract formation) is not whether the parties agreed "to arbitrate the claim currently before the court." *Id.* at \*3.  Rather, "the only issue at the first step is whether there is any agreement to arbitrate any set of claims." *Id.*  If there is an agreement to arbitrate and the agreement contains a delegation clause, the whole dispute goes to the arbitrator; it is the arbitrator's right and responsibility to determine what claims she may validly hear.

The combination of *Petrofac* and *Kubala* makes this case simple.  This court has already ruled that there is a valid and enforceable arbitration clause, and the parties do not meaningfully challenge that ruling.  The arbitration clause incorporates the AAA rules by reference, which, under *Petrofac*, is the functional equivalent of a delegation clause.  Under *Kubala*, once the court determines that there is a valid and enforceable arbitration agreement that contains a delegation clause, the court must grant the motion to compel arbitration.  The arbitrator will hear and rule on the defendants' various arguments as to what claims can properly be heard in arbitration and what claims must be left for the court to decide.

The defendants' arguments are unpersuasive.  They are the usual scope-and-arbitrability arguments and are simply not matters for the court to decide under the arbitration-agreement terms and the cases discussed above.  The defendants are free to make these arguments before the arbitrator.  Second, the cases on which the defendants rely are not sufficient to carry them over the very high hurdle that *Kubala* poses.

11

The defendants cite *Harrod*, a case from the District of Maryland, for the proposition that interpleader jurisdiction "need not yield to arbitration." In that case, a cross-defendant in an interpleader action moved to dismiss on the basis of an arbitration agreement with the party adverse to it. *Harrod*, 2006 WL 1911077, at *2. The court refused to dismiss, reasoning that it had jurisdiction over the interpleader action under the statutory provision granting the court the power to enjoin litigation related to the subject of the interpleader. The court concluded that it had the power to deny the motion to compel arbitration. *Id.* at *2-3. This case does not help the defendants here, because the interpleader action is not before this court. The case says nothing about this court's obligations under the relevant arbitration statutes and cases.

Nor does the defendants' citation to *Turner* help. The defendants characterize *Turner* as holding that "the arbitrator may only decide the factual predicates necessary for the interpleader proceedings." (Docket Entry No. 32 at 6). In *Turner*, one of the two 'defendants' in an interpleader action moved to enforce an arbitration agreement. After reviewing the relevant law under the FAA, the court stayed the interpleader action and sent the two parties off to arbitrate. *Turner*, 2013 WL 6587930, at *5. The court did note that it would apply the "[arbitrated] disposition to the [disputed property] in the court registry" and then "adjudicate any remaining issues that fall outside the scope of the arbitration clause." *Id.* In *Turner*, there was no delegation clause to send arbitrability issues to the arbitrator. The court referred the claims that were within the scope of the agreement to arbitration and noted that if issues remained unresolved after the arbitration was completed, the court would resolve them. While the court reserved the power to award portions of the interpleaded property once the arbitration results were in, that does not mean that the arbitrator was entitled to resolve only the "factual predicate" of the action. Rather, the parties would have to return to the

12

court with the arbitration award in hand and litigate whether and how to enforce that award.  The court would then resolve any pending related issues that were not properly part of the arbitration. *Turner* does not support limiting what "the arbitrator may determine" to "whether the Defendants terminated VB for cause . . . ."  (Docket Entry No. 32 at 6).  The delegation clause cases make it clear that this issue is for the arbitrator to decide.

## IV.    Conclusion

The motion to dismiss for lack of personal jurisdiction is denied.  The motion to compel arbitration is granted.  No pending claim in the lawsuit before this court remains for this court to decide.  This action is dismissed, without prejudice, in favor of the arbitration.  *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.").

SIGNED on September 29, 2016, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

13